Estate of Joseph C. Munafo, Sr., Deceased, Angelo F. Munafo, Administrator v. Commissioner.
Estate of Munafo v. Commissioner
Docket No. 1626-63.
United States Tax Court
T.C. Memo 1965-29; 1965 Tax Ct. Memo LEXIS 301; 24 T.C.M. (CCH) 155; T.C.M. (RIA) 65029; February 16, 1965
*301 Louis Hoffman, 101 Light St., Baltimore, Md., for the petitioner. George K. Dunham, for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has determined deficiencies in the income tax liabilities of Joseph C. Munafo, Sr., deceased, for the years 1957, 1958, and 1959 in the respective amounts of $1,307.68, $1,183.45, and $1,150.75. The issue before us is whether respondent erred in partially disallowing deductions taken by the deceased taxpayer in the taxable years on account of business expenses for "music" incurred in the operation of a bar or tavern in Baltimore. Of these deductions taken in the respective amounts of $7,770; $5,900, and $6,683 respondent disallowed as unsubstantiated the respective amounts of $4,585, $3,365, and $3,303. Findings of Fact A stipulation of some of the facts has been filed herein. We find these facts to be stipulated and incorporate herein by this reference the stipulation, together with the exhibits identified therein and attached thereto. During the taxable years Joseph C. Munafo, Sr., who died in 1960 and who is sometimes referred to herein as "decedent," owned a bar or tavern in Baltimore known as the *302 Gay White Way. He filed his income tax returns for those years with the district director of internal revenue at Baltimore, Maryland. His books were kept and his returns were filed on the cash basis of accounting. During these years Angelo F. Munafo, decedent's son and now the administrator of his estate, was employed by decedent as manager of this business enterprise. The Gay White Way operated under a local license which permitted it to carry on its business for 7 days a week on condition that it furnish "live entertainment" (which would include music) for at least 3 days a week. During 1957 and a part of 1958 Angelo had an arrangement with one Shirley Fields, whereby Shirley Fields was to act as impresario for the furnishing of music to the Gay White Way to consist of herself as virtuoso on the bongo drums and two other musicians to furnish background accompaniment for this solo instrument. For the services of herself and two other musicians for 6 days a week she was to be paid the sum of $160 a week from which she was to pay the other musicians. If she furnished such music for a lesser time than 6 days a week or if only two rather than three musicians performed their art on any *303 occasion she was to be paid some lesser amount than $160 a week. Angelo paid Shirley the amount due her each week at 1:30 a.m. each Monday morning about a half hour before the bar closed. These payments were made by him in cash and Shirley usually signed some pay voucher or other memorandum of payment. From these vouchers or memoranda, or from an informal schedule of them, Angelo made up a total of such payments for the year which he transmitted to a bookkeeper for use in preparing decedent's income tax returns. These payments were not reflected on the regular books of account kept for decedent's business during 1957 and 1958. At some time in the latter part of 1958 Shirley's employment was terminated, and Bertha Brown, who was also known in Baltimore musical circles as Peaches Webb, was employed by Angelo to furnish music to decedent's bar under an agreement similar to his agreement with Shirley. Bertha, like Shirley, played the bongo drums. She furnished music to decedent during the latter part of 1958 and during the year 1959. Angelo's method of paying Bertha was similar to that used in his dealings with Shirley. His method of recording such payments was also similar until May *304 1959 when a new bookkeeper was employed. The new bookkeeper had been an employee of decedent's former bookkeeper and, as such, had prepared decedent's income tax returns for 1957 and 1958. After he became bookkeeper for decedent, he caused the submission to him each week of the vouchers for expenditures on account of music and properly recorded such payments by weekly entries as cash disbursements in decedent's regular books of account. These records indicate that the average weekly payments by decedent on account of music during the months of May, June, and July of 1959 were $150. The new bookkeeper also prepared on behalf of decedent a Form 1099 information return reflecting the payment to Bertha in 1959 of the amount ($6,683) deducted as a music expense by decedent in that year. No such information returns had been filed by decedent for the years 1957 and 1958. It is stipulated that "respondent assessed against petitioner Federal Insurance Contributions Act taxes, Federal Unemployment taxes, and Withholding taxes for the years 1957, 1958, and 1959 based upon the amounts of $7,770.00, $5,900.00, and $6,683.00, respectively, claimed as music expense for the years in question." *305 Shirley or Bertha furnished music to decedent during most of the weeks of each taxable year for 6 days each week, which was rendered on most of the days of each week by three musicians. However, during an undisclosed number of weeks each year (but less than 26) music was furnished for less than 6 days each week and during an undisclosed number of days (but on an average of less than 2 each week) only two musicians contributed to the making of such music. Decedent paid and incurred music expenses in connection with his business in 1957, 1958, and 1959 in the respective amounts of $5,200, $5,200, and $5,650. Opinion KERN, Judge: The question in this case is purely one of fact: Whether decedent made payments for music during the taxable years in excess of the amounts allowed as deductions by the respondent and, if so, the amounts of such payments. Petitioner rests its principal contention on the stipulated fact that respondent has assessed against decedent Federal Insurance Contributions Act taxes, Federal unemployment taxes, and withholding taxes for the years here in question, based upon the full amounts of the payments for music claimed as deductions in decedent's income tax *306 returns. This inconsistency on the part of respondent, so petitioner argues, must be considered as in effect an admission against interest and should be considered as an agreement by respondent "that the petitioner has fully substantiated his deduction for music expense in each of the years involved in this proceeding." This argument, for which petitioner cites no authority, is without merit. Respondent frequently finds himself in a position when he must take inconsistent positions in order to protect the revenue. See , affirming a Memorandum Opinion of this Court; , affirming ; and , affd. . These positions are usually in the alternative depending on the ultimate solution of a question of fact or law by the courts. In the instant case respondent has stated on brief that upon our finding herein the amounts of music expenses paid by decedent "[the] amount of music expense will then have been decided with a certain degree of finality and if the Court's *307 finding is accepted by petitioner, it can form the basis for an abatement of the employment taxes and a refund of such taxes if any have in fact been paid." Respondent strongly urges that the petitioner has not proved that respondent erred in making the determinations here involved. While it is true that the evidence proffered by petitioner is far from satisfactory, and does not support a finding that the full amounts of the music expenses claimed to have been paid by decedent and deducted by him were in fact paid, it is nevertheless our conclusion that the testimony of Angelo and of decedent's bookkeeper taken together does support our Findings that decedent's expenses for music for the taxable years were in the respective amounts set out in our Findings. It is our opinion that a detailed recitation of this testimony is inappropriate and unnecessary. We assume that the administrative action referred to in respondent's brief with regard to the abatement or refund of Federal Insurance Contributions Act taxes, Federal unemployment taxes, and withholding taxes will be taken, consistent with our Findings herein. Decision will be entered under Rule 50.